# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:15-cv-252-FDW

| | |
|---|---|
| BRANDON GERALD STEELE, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| FNU ROBINSON, et al., | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant Antonio Henderson, (Doc. No. 31), and on Plaintiff's two separate Motions to Strike Motion for Summary Judgment, (Doc. Nos. 34, 36).

## I. BACKGROUND

### A. Procedural Background

Pro se Plaintiff Brandon Gerald Steele, a North Carolina state court inmate currently incarcerated at Central Prison in Raleigh, North Carolina, filed this action on June 8, 2015, pursuant to 42 U.S.C. § 1983, based on an incident occurring on February 25, 2015, while Plaintiff was incarcerated at Lanesboro Correctional Institution in Polkton, North Carolina. Plaintiff named as Defendants Antonio Henderson, Renesha Robinson, and Lori Diamond, all alleged to be correctional officers at Lanesboro at all relevant times. Plaintiff alleges that officers Henderson and Robinson used excessive force against him and that officer Diamond was deliberately indifferent to the use of force, all in violation of his Eighth Amendment rights. (Doc. No. 1). As relief, Plaintiff seeks a "preliminary and permanent injunction ordering the

1

Defendants to cease their physical violence and torture towards Plaintiff," as well as $40,000 in compensatory damages against each Defendant jointly and severally, and $30,000 in punitive damages. (Id. at 6).

On initial screening, this Court allowed Plaintiff's claims to go forward against Defendants Henderson and Robinson, but the Court dismissed Diamond as a party. (Doc. No. 6). Defendant Robinson, who is no longer employed with the North Carolina Department of Public Safety ("NCDPS"), was served but did not answer or otherwise respond. On August 24, 2017, this Court entered a default judgment against Robinson as to Plaintiff's excessive force claim against her. (Doc. No. 47).

On March 24, 2017, Defendant Henderson filed the pending summary judgment motion. On April 6, 2017, and then again on May 1, 2017, Plaintiff filed two separate motions to strike various paragraphs in Defendant's summary judgment motion. Specifically, Plaintiff seeks to have the Court strike the portions of the summary judgment motion that refer to Plaintiff's underlying conviction and disciplinary infractions that he has incurred while in prison. Plaintiff contends that his criminal history and infractions are irrelevant to this excessive force action and are inadmissible under North Carolina Rule of Evidence 802. See (Doc. Nos. 34, 36).

On April 10, 2017, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. (Doc. No. 35). Plaintiff filed a response to the summary judgment motion on May 1, 2017, along with one of his motions to strike. (Doc. No. 36). Therefore, this matter is ripe for disposition.

    B.    <u>Factual Background</u>

    1.    <u>The Alleged Excessive Force Incident and the Summary Judgment Evidence</u>

a. <u>Plaintiff's Allegations</u>

In his Complaint and his summary judgment materials, Plaintiff claims that Defendants Robinson and Henderson used excessive force against him on February 25, 2015, at approximately 8:15 p.m., while he was an inmate at Lanesboro. He alleges the following facts in his Complaint and in his sworn affidavit in response to the summary judgment motion:

> On the night of 2-25-15 I was being escorted to the shower by Defendant Robinson when a verbal altercation occurred between the two of us. She threaten[ed] to return and assault me when she pulled me from the shower. She returned with Defendant Henderson a short time later to pull me out of the shower. Defendant Henderson placed the handcuffs on me and opened the shower door. The second I stepped out of the shower Officer Robinson began assaulting me and Defendant Henderson placed me in a choke hold and slammed me onto the concrete floor. While being held on the floor by Defendant Henderson, Defendant Robinson stomped and kicked me until other officers forcefully pulled her off me and restrained and carried her out of the block. I did not make any lunging move or assault anyone. I suffer[ed] injury to my lower back and I suffer[ed] mentally and emotionally from the incident.

(Doc. No. 36 at 16; <u>see also</u> Doc. No. 1 at 6-7). Plaintiff alleges that a nurse came to assess his injuries that evening, but he refused medical treatment because he was afraid to leave his cell. Plaintiff received medical treatment the following day. (Doc. No. 1 at 7). Plaintiff alleges that he suffered injuries to his lower back as a result of Defendant Henderson placing him in a chokehold and slamming him to the concrete floor. (Doc. No. 33-1 at 6).

b. <u>Defendant's Summary Judgment Materials</u>

In support of the summary judgment motion, Defendant Henderson has submitted his own affidavit, as well as the affidavits of Lanesboro Correctional Officer Damon E. Benjamin, and Lanesboro Correctional Captain II David A. Aaron; NCDPS's use of force policy; the prison's February 25, 2015, Incident Report; surveillance video of the February 25, 2015, incident; Plaintiff's signed acknowledgement that he reviewed the video; and Plaintiff's

disciplinary infraction history. See (Doc. No. 32-1). Defendant Henderson's summary judgment materials show that, on February 25, 2015, at approximately 8:15 p.m., correctional officers Benjamin, Defendant Henderson, and Defendant Robinson were on duty at Lanesboro, escorting inmates from the shower area in Pod A back to their cells. (Doc. No. 32-3 at ¶ 4: Benjamin Aff.). Both Benjamin and Defendant Henderson assert that, as Plaintiff was exiting the shower, he made a lunging move toward Robinson. (Id. at ¶ 4; Doc. No. 32-2 at ¶ 4: Henderson Aff.). Henderson specifically asserts that Plaintiff "was in the showers when he called CO Robinson 'a fat bitch.' When [Plaintiff] was finished with his shower, I went to the shower door and placed handcuffs on him with his hands behind his back. CO Robinson and I then began escorting [Plaintiff] back to his cell. When [Plaintiff] exited the shower door, he made a move toward CO Robinson and it looked to me that he was trying to head butt her. I then saw CO Robinson put her hands up in a locking motion. I immediately reacted, taking [Plaintiff] to the ground to secure him." (Doc. No. 32-2 at ¶ 4).

Henderson asserts that, in accordance with his training as a NCDPS correctional officer, he responded by using a restraint technique to take Plaintiff to the floor. (Id.). Henderson explains that correctional officers are taught to secure combative inmates by taking them to the nearest hard surface and pinning them against the hard surface until help arrives. (Id.). He goes on to assert that "[b]oth I and CO Robinson gave [Plaintiff] orders to stop resisting, but he continued to struggle. I was on top of [Plaintiff] attempting to control his upper body. I could not see what CO Robinson was doing. Shortly after the incident started, other correctional officers arrived at the scene. CO Robinson was escorted from the area. [Plaintiff] was restrained and eventually taken to his cell." (Id.). Defendant Henderson further states: "I did not see CO Robinson punch or kick [Plaintiff], as my head was turned from her as I was attempting to secure

4

[Plaintiff]." (Doc. No. 32-2 at ¶ 5). Henderson further asserts that he at no time attempted to injure Plaintiff. (Id.).

Correctional officer Benjamin asserts in his affidavit that during the incident, while Defendant Henderson was attempting to control Plaintiff's upper body, Benjamin attempted to control Plaintiff's legs. (Doc. No. 32-3 at ¶ 5). Benjamin further asserts that Plaintiff was given several direct orders to quit struggling, but he continued to resist. (Id. at ¶ 4). Benjamin also asserts that he "then got up to pull CO Robinson back, but she resisted." (Id.). Ultimately, it took multiple staff members to remove Robinson from the scene because she continued to resist. See (Id.). Benjamin asserts that Defendant Henderson did not "slam [Plaintiff] or attempt to choke him." (Id. at ¶ 5).

After the incident, Plaintiff was escorted back to his cell to wait to be seen by medical staff. (Doc. No. 32-4 at ¶ 5 & Ex. B, C). Plaintiff refused medical evaluation and treatment that evening and was not seen by medical personnel until the following day, when Plaintiff reported mild, non-radiating, intermittent pain on the right side of his back, with the pain severity estimated at a level of four on a scale from one to ten. (Id.; see also Doc. No. 36 at 40). The use-of-force assessment form dated February 26, 2015, indicates no apparent injuries to Plaintiff. (Id.).

Defendants have submitted surveillance video taken during the incident, with one portion showing the stairway in A-Pod on the Anson Unit and the other showing a hallway near the showers in A-Pod on the Anson Unit. The surveillance video of the hallway near the showers specifically shows, beginning on the time lapse at 8:15:24, Plaintiff and several correctional officers moving rapidly from the showers into the hallway in an apparent physical struggle. The video then shows Plaintiff being placed on the floor in the hallway. The video then shows

5

Robinson kicking Plaintiff while Plaintiff was on the floor and being restrained by Defendant Henderson and officer Benjamin. See (Doc. No. 32-4 at ¶ 5 & Ex. C). The video further shows that Defendant Henderson continued to restrain Plaintiff while Benjamin attempted to pull Robinson from the scene. (Id.). The video also shows multiple staff members removing Robinson from the area as she continued to resist and struggle against the officers. (Id.).

Correctional Captain II David Aaron was assigned as the reviewing authority for a Use of Force Incident Report concerning the incident. (Doc. No. 32-4 at ¶ 4). Aaron states in his affidavit that he has received extensive training responding to combative inmates, including the use of appropriate restraint techniques, and in conducting use-of-force incident investigations. (Id. at ¶ 3). He is also familiar with NCDPS's Policy and Procedures on Use of Force. (Id.; see also Ex. A). As part of his review of the incident, Captain Aaron read the Incident Report and the accompanying witness statements. He also reviewed the surveillance video of the incident. (Doc. No. 32-4 at ¶ 4 & Ex. B, C).

Aaron asserts in his affidavit that, from his review of the witness statements and the surveillance videos, he determined that Plaintiff attempted to attack Robinson and that Defendant Henderson immediately responded by taking Plaintiff to the floor. (Id. at ¶ 5). Captain Aaron concluded that Defendant Henderson used force in an appropriate manner, taking Plaintiff to the floor and attempting to control his upper body, while officer Benjamin attempted to control Plaintiff's legs. (Id.). Aaron further concluded that Robinson acted inappropriately by attempting to kick Plaintiff while he was on the floor being restrained by Defendant Henderson. (Id.). Robinson is no longer employed by NCDPS.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

6

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a

7

> genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

## III. DISCUSSION

### A. Plaintiff's Motion to Strike Portions of Defendant's Summary Judgment Memorandum

The Court first considers Plaintiff's motions to strike portions of Defendant's memorandum in support of the summary judgment motion in which Defendant refers to Plaintiff's criminal history and infractions that he has incurred since he has been imprisoned. That is, in his memorandum, Defendant Henderson notes that Plaintiff was convicted on April 6, 2009, of second-degree murder. (Doc. No. 32 at 2). Defendant Henderson further states in his memorandum that Plaintiff is a member of the Bloods, a gang that has a history of violence and criminal activity in prisons, and his offender sheet shows that he has been charged with twelve separate instances of gang activity while incarcerated. (Id. at 5). As such, Plaintiff has been designated as a member of a Security Threat Group, Level III. Furthermore, since his incarceration, Plaintiff has incurred ninety-nine infractions, including: (1) five charges of setting fires; (2) nine charges of threatening staff; (3) five charges of weapons possession; (4) eight charges of assault with a weapon; (5) two charges of assaulting staff; (6) two charges of being an active rioter; and (7) one charge of fighting. Plaintiff seeks to have the Court strike these paragraphs in Defendant's brief, contending that they are not relevant to Plaintiff's claim of excessive force and that they also are not admissible under North Carolina Rule of Evidence 802.

North Carolina Rule of Evidence 802, and the comparable Federal Rule of Evidence 802, prohibit the admissibility of hearsay. See N.C. R. EVID. 802; FED. R. EVID. 802. Plaintiff's criminal history and infractions are not hearsay within the meaning of Rule 802. Rather, Plaintiff's challenge to this evidence appears to be based on his contention that it is impermissible character evidence under Federal Rule of Evidence 404(b)(1), and that the evidence should further be stricken as prejudicial under Federal Rule of Evidence 403. In any event, the Court will grant the motions to strike to the extent that the Court has <u>not</u> considered, in assessing Defendant's summary judgment motion and the excessive force issue, the criminal history and infractions incurred by Plaintiff.

### B. Plaintiff's Excessive Force Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, although the lack of serious injury may be considered a factor in the excessive force analysis, the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

9

The Court first finds that, to the extent that Plaintiff has sued Defendant Henderson in his official capacity, the suit is against the NCDPS and the State of North Carolina. However, neither the State nor it agencies constitute "persons" subject to suit under Section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). Furthermore, the Eleventh Amendment bars Plaintiff's suit for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). Thus, Plaintiff is precluded from seeking damages against Defendant Henderson in his official capacity.

Next, to the extent that Plaintiff has sued Defendant Henderson in his individual capacity, the Court finds that Plaintiff has not raised a genuine dispute of fact as to whether Defendant Henderson used excessive force against Plaintiff.[1] As Defendant Henderson's summary judgment materials make clear, just before Henderson took Plaintiff to the ground Plaintiff was clearly struggling with the officers as he was being escorted from the shower. (Doc. No. 32-2 at ¶ 4; Doc. No. 32-3 at ¶¶ 4, 5). Defendant Henderson reacted immediately by taking Plaintiff to the nearest hard surface in order to restrain him. (Doc. No. 32-2 at ¶ 4; Doc. No. 32-3 at ¶ 4; Doc. No. 32-4 at ¶ 5). Responding to the scene, officer Benjamin attempted to secure Plaintiff's feet and overheard Plaintiff refusing several direct orders from Defendant Henderson and Robinson to stop resisting. (Doc. No. 32-3 at ¶ 4; Doc. No. 32-2 at ¶ 4).

In his allegations and summary judgment materials, Plaintiff alleges that Defendant Henderson put him in a chokehold and "slammed" him to the ground in a malicious and sadistic manner. This Court finds that the evidence does not support such a finding. Here, Defendant's summary judgment evidence supports Defendant's contention that he reacted quickly to an

---

[1] Furthermore, Plaintiff's claims for injunctive relief are now moot because he is no longer incarcerated at Lanesboro.

incident in which he reasonably believed that Plaintiff was attacking another correctional officer, and that he used appropriate techniques to restrain Plaintiff and continued to do so until assistance arrived. (Doc. No. 32-2 at ¶ 4; Doc. No. 32-3 at ¶¶ 4, 5; Doc. No. 32-4 at ¶ 5). While the surveillance video of the incident clearly shows Robinson kicking Plaintiff while he was down on the floor, (Doc. No. 32-4 at ¶ 5 & Ex. C), the video does not clearly show Defendant Henderson or any of the other officers kicking or otherwise assaulting Plaintiff while he was on the floor.

Plaintiff also maintains in his affidavit opposing the summary judgment motion that he did not lunge at Robinson before she began kicking and punching him, but the video shows Plaintiff clearly struggling against the officers, including movant Henderson, as he was moved into the hallway from the showers. (Doc. No. 33-1 at 12). The video also shows that only several seconds passed between the time Plaintiff was struggling with the officers as he was being led away from the showers and when Defendant Henderson took him to the floor. Therefore, whether Plaintiff initially lunged at Robinson is not dispositive on the pending summary judgment motion as to whether Defendant Henderson used excessive force against Plaintiff.

Plaintiff further asserts in his affidavit that he "did not prompt the use of force that was applied to him" during the incident. (Id.). Again, even if Robinson, through her own misconduct, initiated the use of force against Plaintiff, the evidence on summary judgment indicates that Plaintiff was clearly struggling and resisting the officers just before Henderson took Plaintiff to the ground. Furthermore, the summary judgment evidence supports a finding that the use of force and the need for force were closely matched. In other words, Henderson's use of force against Plaintiff was preceded by resistance from Plaintiff, and Plaintiff has simply

11

failed to raise a genuine issue of dispute as to whether Henderson applied force maliciously and sadistically against Plaintiff with the purpose of causing harm.

The Court observes, finally, that the summary judgment evidence, including the surveillance video, shows that Defendant Robinson, who is no longer employed with NCDPS, and against whom default judgment has been entered, clearly acted inappropriately by continuing to kick Plaintiff when he was on the floor, handcuffed, and no longer resisting.[2] Furthermore, the video evidence clearly shows that the other officers were forced to physically restrain Robinson to get her away from Plaintiff, and she continued to struggle with the other officers as they led her away. As the NCDPS has indicated, Robinson is no longer employed with the NCDPS, which the Court suspects is the direct result of her conduct during the incident. Although the video and the summary judgment evidence show that Robinson's conduct was clearly inappropriate, the evidence on summary judgment supports a finding that Henderson's own conduct was entirely appropriate.

Finally, although the absence of serious injury is not dispositive in an excessive force

---

[2] The NCDPS concluded as such as well. The Incident Report states, as follows: "A review of the investigation and video evidence shows Officer Robinson and Henderson initially removing [Plaintiff] from the upstairs shower in NA-Pod. Once the shower door opens, [Plaintiff] is restrained behind the back and appears to be moving quickly. This is when Officer Henderson places [Plaintiff] on the floor and Officer Benjamin and Robinson assist him. Initially the force looks justified. However, Robinson, after backing away at first, goes back towards [Plaintiff] who is laying on the floor restrained in a hostile manner and begins punching and kicking at him. Officer Benjamin then begins to attempt to restrain Officer Robinson as she is still being aggressive; Officer Melton then arrives and assists Officer Benjamin in restraining Officer Robinson. Officer Robinson is forcefully carried out of the pod as she is still being aggressive and attempting to free herself from staff. [Plaintiff] was placed back in cell and provided medical attention by [a nurse] but refused it. . . . The behaviors that Officer Robinson exerted are explained by her past dealing [with] her abusive father. However, her past does not justify her behavior towards the inmate population and is not appropriate nor professional. Internal investigation has been initiated . . . ." (Doc. No. 33-1 at 30-31).

action, the lack of serious injury may be considered in the analysis. Wilkins v. Gaddy, 559 U.S. at 38. Defendant Henderson contends that Plaintiff suffered no discernible injury from the incident, as evidenced by his refusal of medical attention afterwards. (Doc. No. 32-4 at ¶ 5). Although Plaintiff alleges that he continues to suffer from back pain as a result of the incident, the record indicates that as of April 15, 2015, about two months after the incident, Plaintiff had not submitted a sick call related to any back pain, and he did not do so until April 17, 2015. See (Doc. No. 1-1 at 8, 9). Even assuming Plaintiff's allegations are true that he suffered from lower back pain as a result of being taken to the ground by Defendant Henderson, these minimal injuries support a finding that Defendant Henderson did not use excessive force. In other words, even if Defendant Henderson's use of force resulted in some mild back pain to Plaintiff, the use of force was nonetheless justified under the circumstances of this case. In sum, Defendant Henderson is entitled to summary judgment in his favor as to Plaintiff's claim against him for excessive force.[3]

---

[3] Defendant also raised qualified immunity as a defense to Plaintiff's excessive force claim. Because the Court has determined that there was no constitutional violation in the first instance, the Court does not need to determine whether Defendant is entitled to qualified immunity.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Henderson's Motion for Summary Judgment, (Doc. No. 31), is **GRANTED**, and Plaintiff's claim against Defendant Henderson is dismissed with prejudice.

2. Plaintiff's Motions to Strike, (Doc. Nos. 34, 36), are **GRANTED**.

Signed: September 15, 2017

Frank D. Whitney
Chief United States District Judge